DOROTHY TOLLIVER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
TOLLIVER v. COMMISSIONER
Docket No. 14912-89
United States Tax Court
T.C. Memo 1991-460; 1991 Tax Ct. Memo LEXIS 509; 62 T.C.M. (CCH) 770; T.C.M. (RIA) 91460; September 19, 1991, Filed *509 Decision will be entered for the respondent for the amount of the deficiency and for the petitioner in regard to the additions to tax. Joseph H. Blackwell, for the petitioner. Donza M. Poole, for the respondent. BUCKLEY, Special Trial Judge. BUCKLEY
MEMORANDUM OPINION This case was heard pursuant to the provisions of section 7443A(b) and Rules 180, 181, and 182. [1]
Respondent determined a deficiency of $ 4,647 in petitioner's Federal income tax for taxable year 1986, together with additions to tax for negligence under section 6653(a)(1)(A) and (B) in the respective amounts of $ 14 and 50 percent of the interest due on the portion of the deficiency attributable to negligence under section 6653(a)(1)(A). Prior to the trial herein, petitioner orally moved to withdraw her petition in this Court, *510 so that she might pursue a refund action in the United States District Court. Petitioner paid the deficiency amount after the issuance of the notice of deficiency, as well as after the filing of her petition. Petitioner's motion was orally denied by the Court for reasons set forth in detail in the transcript of the proceedings. After concessions, [2] the sole issue for decision is whether a distribution received by petitioner from a section 403(b)(1) employee annuity contract is excludable from taxable income as a tax-free rollover. Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated herein by this reference. Petitioner filed *511 her 1986 tax return as a married individual filing separately. At the time of the filing of the petition in this case, petitioner resided in Cleveland, Ohio. Until her retirement in 1987, petitioner had taught in public schools since 1944. She took a hiatus from teaching for some 10 years during the 1950s and 60s, initially because of illness and then to raise her young children. Essentially all of petitioner's career as a teacher was spent working for the Cleveland Board of Education, and as such, she was a member of the State Teachers Retirement System of Ohio (hereafter STRS). When petitioner retired in 1987 she was credited with 33 years of service. The Internal Revenue Service approved STRS as a qualified plan under section 401(a) in 1976, and through the time of trial the plan operated under that status. Upon returning to teaching in the 1960s, petitioner decided to make an additional retirement investment. She elected to enroll in an annuity contract provided by her employer and underwritten by Great-West Life Assurance Company (hereafter Great-West). Under agreement with her employer, petitioner's salary was reduced by way of payroll deduction and the amounts were *512 contributed to the purchase of the annuity contract. These payroll contributions qualified for favorable tax-deferred treatment under section 403(b)(1), and, in the year contributed, petitioner paid no tax on the amount of salary reduction used to purchase into the plan. In 1985 petitioner, who was at least 59-1/2 years of age, began contemplating retirement and considered consolidating her retirement investments so income benefits would flow from a single source. Upon learning that she met certain conditions for the purchase of 3 additional years of service credit in STRS, she decided to withdraw funds from the Great-West annuity contract and use a portion to purchase the additional service credit in STRS. Sometime in early 1986 petitioner received two distributions from Great-West in the form of checks, one for $ 2,200 and the other for $ 10,000. On March 19, 1986, STRS received payment from petitioner in the amount of $ 10,133.88 for the purchase of service credit. Petitioner made this payment by endorsing the $ 10,000 check from Great-West over to STRS and by separate personal check for $ 133.88. Petitioner believed that the transaction qualified as a tax-free rollover *513 into STRS. On her 1986 tax return petitioner reported the entire $ 12,200 distribution from Great-West as a nontaxable rollover into STRS. She now concedes that $ 2,200 of the amount is taxable. Respondent determined that the entire amount was a taxable distribution from a section 403(b) tax-sheltered annuity. Petitioner bears the burden of proving that respondent's determination is incorrect. ; Rule 142(a). With respect to a qualified annuity contract (such as petitioner held with Great-West) described in section 403(b)(1): "The amount actually distributed to any distributee under such contract shall be taxable to the distributee (in the year in which so distributed) under section 72 (relating to annuities)." See the flush language to section 403(b)(1). However, as applicable herein, if any portion of the amount so distributed is transferred by the distributee, within 60 days of receipt, to either an individual retirement plan or to another section 403(b)(1) annuity contract, such amount "shall not be includible in gross income for the taxable year in which paid." See section 403(b)(8)(A) and (C) and section 402(a)(5)(C). *514 Petitioner contends that her transfer of $ 10,000 of the Great-West distribution to STRS constituted a tax-free rollover pursuant to section 403(b)(8). Petitioner must therefore show (1) that the rollover was accomplished no more than 60 days after receipt of the distribution from Great-West and (2) that the $ 10,000 transfer to STRS was a transfer to another annuity contract qualifying under section 403(b)(1). No argument was advanced that STRS was an individual retirement plan, and the record clearly establishes it was not. It was, as earlier stated, a qualified plan under section 401(a). The date on which petitioner made the transfer to STRS was firmly established to have been March 19, 1986. In dispute, however, is the date on which petitioner received the $ 10,000 distribution from Great-West. The parties agree that it was received sometime in 1986, but disagree on whether it was received inside or outside the requisite 60-day period for making a tax-free rollover. At the outset of the hearing, petitioner objected to respondent's refusal to stipulate to a date reflected in a document prepared by respondent's employee during the administrative appeals process. Respondent *515 maintained that no independent substantiation of the date had ever been provided by petitioner, e.g., photocopy of the check issued by Great-West or bank records, and respondent should therefore not be required to stipulate to any date. Petitioner's counsel agreed that a photocopy of the $ 10,000 check was readily available, but asked the Court to leave the record open so petitioner might obtain it. We granted petitioner's request and allowed 3 weeks from the date of trial for petitioner to produce the photocopy. During the trial, petitioner adduced no proof of the date the check was issued or the date it was received. Moreover, subsequent to the trial, petitioner failed to provide the Court with a photocopy of the check. Petitioner failed to carry her burden of proof that she rolled the $ 10,000 distribution into STRS within the required 60-day period. Even if we assume, arguendo, that petitioner's transfer was made within the 60-day period, she has pointed to nothing from which we might conclude that the transfer qualified as a tax-free rollover within the intendment of section 403(b)(8). STRS was shown to be a qualified plan under section 401(a), but a plain reading of 403(b)(8) *516 makes clear that to effect a tax-free rollover of a distribution from a 403(b)(1) tax-sheltered annuity, the transfer must be "to an individual retirement plan or to an annuity contract described in paragraph (1)." Sec. 403(b)(8)(A)(ii) (emphasis added). This language is to be contrasted with the broader rollover provisions of section 402(a)(5) which allow tax-deferred treatment for rollovers from a section 401(a) plan to a number of "eligible retirement plans." Prior to the addition of section 403(b)(8) to the Code, a taxpayer could not defer taxation on a distribution from a section 403(b) tax-sheltered annuity. The subsection (b)(8) rollover provisions were added by the Revenue Act of 1978, Pub. L. 95-600, tit. I, sec. 156, 92 Stat. 2801-2803. The conference committee report on the Act explains that the Senate version of the bill was enacted with certain amendments. The following explanation was reported by the conference committee: Under present law, the recipient of a "lump-sum distribution" from a tax-qualified pension, profitsharing, stock bonus, or annuity plan may defer tax on the receipt of such distribution by rolling over the proceeds (net of any employee contributions) *517 within 60 days of receipt to an individual retirement arrangement or to another employer-sponsored qualified retirement plan. * * * Recipients of distributions under a tax-sheltered annuity purchased by an employer that is a tax-exempt organization or a public school are taxed under the usual annuity rules (section 72). They are not eligible * * * to roll distributions over to an individual retirement arrangement or to another tax-sheltered annuity. The Senate amendment permits recipients of a "lump-sum distribution" from a tax-sheltered annuity to defer tax on the distribution by rolling it over within 60 days of receipt to an individual retirement arrangement or to another tax-sheltered annuity.
* * * H. Rept. No. 95-1800 (1978), 1978-3 C.B. (Vol. 1) 521, 547-548. Undoubtedly then, the intent of Congress was to allow some flexibility for employees to make tax-free rollovers from a section 403(b)(1) annuity, but not to provide the same latitude as is available to participants in section 401(a) plans. Petitioner did not articulate an argument that STRS constitutes an annuity contract as contemplated in section 403(b)(1), [3] but unless such is the case, *518 the transfer clearly did not fall within the purview of that section. The evidence of record is to the contrary. Respondent placed in evidence a copy of a STRS prospectus wherein STRS is depicted as a pension plan for providing retirement, death, and disability benefits to employees or their families. It is funded by employee and employer contributions as well as by investment income. The amount of benefits paid to participants is based upon an employee's number of years of service and level of compensation. The plan operated as a qualified trust described in section 401(a) and the regulations promulgated thereunder. There is no evidence that it was a contract annuity described in section 403(b). Petitioner testified that she intended for the $ 10,000 transfer from Great-West to STRS to be a tax-free rollover, and that she honestly believed *519 the transfer qualified as such. She further testified that she relied upon information provided in certain IRS publications and "maybe" by an IRS employee. She was unable to be more specific about which publications she relied on or who at the IRS she talked with or what she was told. Though far from clear, petitioner apparently argues that under these circumstances respondent should be estopped from including the $ 10,000 rollover as income. We decline to so hold. In the first place, petitioner's testimony regarding reliance on IRS information lacked specificity, was vague, and is unpersuasive. Consequently, she has failed to establish an important element of equitable estoppel, i.e., the existence of a false representation or wrongful, misleading silence by the party against whom the doctrine is being invoked. See . In any event, the doctrine does not apply to an erroneous interpretation of the law by respondent's agent. , affg. . Moreover, "sources of authoritative law in the tax field are the *520 statute and regulations, and not informal publications." . We accept that petitioner sincerely believed she had effected a tax-free rollover; however, unfortunately for her, under the facts of this case, that belief was contrary to law. We sustain respondent. Decision will be entered for the respondent for the amount of the deficiency and for the petitioner in regard to the additions to tax. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Respondent concedes that petitioner is not liable for the additions to tax for negligence, and petitioner concedes she failed to report $ 677 of interest income and $ 100 of dividend income. Petitioner also concedes that a $ 2,200 distribution received in 1986 from an annuity contract is taxable as ordinary income.↩
3. We note that though petitioner requested and was granted the opportunity to submit a post-trial brief in this matter, for reasons unknown, she refrained from doing so.↩